IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Case No.: 3:06cr266-WKW |
| ) | |
| PAUL EUGENE WEBSTER ) | |

**DEFENDANT'S MOTION FOR NEW TRIAL
AND RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

**COMES NOW** the Defendant, Paul Eugene Webster, by and through undersigned counsel, Jennifer A. Hart, and pursuant to *Federal Rules of Criminal Procedure* 29(c), and 33, as well as the Fifth and Sixth Amendments to the United States Constitution, moves this Honorable Court for the entry of a judgment of acquittal and/or, in the alternative, for a new trial in this case. In support of this Motion, the Defendant states the following:

**FACTS AND PROCEDURAL HISTORY**

On November 16, 2006, Paul Eugene Webster was indicted on one count of being a felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g)(1). (Docket Entry # 8) On November 29, 2006, Mr. Webster appeared for arraignment before this Court and entered a plea of not guilty to the charge. The case was set for trial on the January 2007 trial term before the Honorable William Keith Watkins, United States District Court Judge for the Middle District of Alabama. Prior to jury selection, Mr. Webster submitted two "theory of defense" instructions - a justification defense and an innocent or transitory possession defense. (Docket Entry #29) Mr.

Webster also requested that the Court hold a status conference regarding the requested jury instructions prior to the start of trial. (Docket Entry # 30)

Additionally, prior to jury selection, Mr. Webster filed a *Motion to Dismiss the Indictment Due to the Composition of the Jury Venire*. (Docket Entry # 32)  The Government filed a written response to the *Motion to Dismiss*, (Docket Entry #34), but filed no written response to the requested theory of defense instructions and no *in limine* motions seeking to include or exclude any particular type of evidence.

Jury selection began on January 8, 2007 and the trial commenced later that same date.  Prior to the voir dire of the jury, the Court heard arguments from counsel for both sides regarding the proposed theory of defense instructions.  At one point, the Court excused Government counsel from the courtroom to allow defense counsel to make a proffer regarding the evidence it whished to present in defense of Mr. Webster.[1]  The Court concluded that Mr. Webster would be prohibited from presenting any evidence in support of a justification defense but reserved ruling on whether or not to allow Mr. Webster to present evidence regarding the innocent or transitory possession defense. (Transcript, pages 103-104)

During the proffer, Mr. Webster asserted that the evidence would show that he gave the firearm at issue to Charles Bailey the morning following the attempted abduction of Mr. Bailey's 10 year-old daughter Bridgette.   The evidence would have shown that, following this incident,  Mr. Webster stays with the young girl and her mother until the father returns home.  The next morning, after learning that the same man returned to the Bailey residence and woke-up Bridgette by banging

---

[1] That portion of the trial transcript was placed under seal by the Court.  (Docket Entry # 46), but was unsealed at the request of the undersigned for preparation of this pleading.  (Docket Entry #56)

2

on her bedroom window, Paul Webster retrieved a shotgun from a shed behind his mother's home where he was staying, and transported it to Charles Bailey. Also, the Defense could have presented testimony that Mr. Webster retained in his possession a pellet gun and some camping gear and intended to camp out in the woods near the Bailey residence. Through other witnesses it could be established that there had been other sightings of this individual, that he had not been apprehended and that the neighbors in this isolated community had repeatedly reported the presence of a strange individual to the police, to no avail. Thus, it was Mr. Webster's contention that there existed a real, continual threat to the life of Bridgette Bailey, and as Mr. Webster stated to the police, he gave the firearm to Charles Bailey for protection. (Pretrial Hearing Transcript, pages 96 - 102) The Government counsel returned to the courtroom, was advised of the ruling, and jury selection was then completed.[2] (Pretrial Hearing Transcript, pages 105 -150)

Mr. Webster also asserted that the proffer would have supported an innocent or transitory possession defense, and in fact, the evidence presented at trial was that Mr. Webster had possession of the firearm for only the period of time he drove it from his mother's residence to the Bailey residence. Though the Government argued that he had possession of the firearm the first time he saw it in his mother's shed, that argument is without merit. Knowing possession of a firearm requires

---

[2] Extraordinarily troubling is the fact that, upon returning to the courtroom, Counsel for the Government asserts that what she "just learned is that there are a number of witnesses, including police officers, that were subpoenaed by the defense . . . to testify regarding what happened in the community, what happened with another child, and any other calls made to law enforcement regarding any alleged or attempted abduction of the child." (Pretrial Hearing Transcript, pages 113-114) Mr. Webster asserts that the only way the Government could have "just learned" that information is if Government counsel herself, or someone acting at her behest, either listened to the proffer which was intended to be ex parte or was interrogating defense witnesses out in the hallway during the ex parte hearing. In either case, the fact that the Government immediately knew the content of the proffer raises a question of impropriety on behalf of the United States in this case.

more than a mere viewing; there must be the ability to exercise dominion and control over the firearm and that was not proved in this case under any standard of review.

With regard to the justification defense, the Court concluded that the proffer did not establish that there was an imminent, impeding threat of death or serious bodily injury. (Pretrial Hearing Transcript, pages 102 - 103) Mr. Webster respectfully disagrees with that conclusion. A little girl was grabbed as she walked home from a friend's house early one evening, the man threatened to return after Bridgette got away and, according to Bridgette and her parents, did return sometime late that evening or the next morning. The police investigated the incident but did not make any arrests. Moreover, as Charles Bailey is a truck driver, Bridgette Bailey and her mother are often home alone.[3]

The trial began later that same day with the Government's opening statement. During its opening statement the Government referenced a statement made by Paul Webster. (Trial Transcript, page 12) The Government did not mention that Mr. Webster had possessed the firearm on some previous occasion and did not mention anything regarding the attempted abduction of Bridgette Bailey.

As Mr. Webster began his opening statement. Defense counsel began to describe to the jury how Charles Bailey had come into possession of the firearm he turned over to the police, and the Government immediately objected. (Trial Transcript, pages 14 -15). The Court sustained the objection. (Trial Transcript, page 15) After a sidebar conference with counsel, the Court ruled that Mr. Webster could state only that there had been an incident with the child; "you can say there was an incident with the minor child, but I don't want this to go any further at this point." (Trial

---

[3] Bridgette Bailey has a younger brother that lives in the residence as well, but that information was not noted during the proffer.

Transcript, page 16)   The Government, still unsatisfied with the restrictions placed on Mr. Webster actually sought to have Defense Counsel prevented from using the word "protection" in her opening statement, even though the word was contained in the written statement which Government counsel had just referenced in her own opening statement. The following exchange took place:

> MS. HARDWICK:   Can we caution her not to say why he carried it there, for protection, that she stops short of saying protection?
>
> THE COURT:   I would say stop short of protection. Just leave it at that, and then I'll let you know tomorrow how far you go on that.

(Trial Transcript, page 17)   To the utter amazement of the Defense, Mr. Webster was precluding from using the word he used in his written statement which had just been referenced by the Government; a statement the Government already had marked as an exhibit and introduced with its very first witness not 5 minutes later.   After being completely stymied by the Government and the Court, Defense counsel made some nonsensical opening statement offering no theory of defense and sat down.

The Government called three witnesses at trial: Officer Keith Jordan of the Lee County Sheriff's Department, ATF Agent Theron Jackson and Charles Bailey, the father of 10 year-old Bridgette Bailey who was the victim of an attempted abduction the night before Paul Webster transferred the firearm to her father.   During the examination of its very first witness, Officer Keith Jordan, the Government introduced into evidence a statement given by Paul Webster to the police in which he stated that he gave the firearm to Charles Bailey "for protection" after the attempted abduction of Mr. Bailey's daughter.  The Government continued to question Officer Jordan about the statement for approximately 5 pages of the transcript, carefully leaving out the portion regarding the fact that the firearm had been given to Mr. Bailey "for protection." (Trial Transcript, pages 23 -

28)

Following the direct testimony of Keith Jordan, Paul Webster moved for a mistrial asserting the egregious conduct by the prosecution in orchestrating the presentation of evidence in such a manner that hamstrung the defense and benefitted the Government. The Court disagreed and denied the motion. (Trial Transcript, pages 32-33) The Court rejected the Defense argument that the Governmetn had opened the door to the justification defense or to evidence regarding the need for protection. The Court allowed the Defense to question Officer Jordan about the statement but would not allow any testimony from any witness regarding the continued threat to Bridgette, the specifics of what happened that evening and would not allow Bridgette Bailey to testify. Mr. Webster asserts that the Government's, whether through deliberate misconduct, or complete lack of judgment, opened the door to all evidence concerning the abduction which was referenced in the statement which the Government introduced and presented to the jury. This error requires a new trial.

Mr. Webster later renewed his motion for mistrial which the Court again denied. Following the close of the Government's case, Mr. Webster moved, pursuant to *Federal Rule of Criminal Procedure* 29, for a Judgment of Acquittal. The Court denied the motion. The jury returned a verdict of guilty on January 9, 2007.

**DISCUSSION**

Paul Webster is entitled to the entry of a Judgment of Acquittal in this case because the government failed to establish the elements of the offense by proof beyond a reasonable doubt and because the Government told the jury the incorrect standard of proof. Alternatively, Mr. Webster is entitled to a New Trial in this case based on the numerous trial errors that occurred and based upon

the misconduct of the Government in intentionally dictating the manner in which the defense could proceed at trial, and then introducing evidence, which it sought to exclude the defense from mentioning, in its case in chief.

The Sixth Amendment to the United States Constitution guarantees the accused the right to a fair trial by an impartial jury. U.S. CONST. amend. VI. Paul Eugene Webster did not receive one. Additionally, the Fifth Amendment guarantees that "no person shall . . . be deprived of life, liberty, or property, without due process of law . . ." U.S. CONST. amend. V. Paul Eugene Webster did not receive due process of law either. See *United States v. Campo*, 419 F.3d 1219, 1258 (11th Cir. 2005) (a fair trial is a basic requirement of due process). Mr. Webster is now convicted of this offense and is awaiting a sentencing. According to the Presentence Report prepared in this case, he faces a sentence in excess of 20 years.

### The Court's Ruling on the Theory of Defense Instructions was Premature

To prove a justification defense, the Defendant must show the following facts by a preponderance of the evidence: (1) that the defendant was under unlawful, present, imminent, and impeding threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct casual relationship between the criminal action and the avoidance of the threatened harm. *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000); *United States v. Rice*, 214 F.3d 1295, 1297 (11th Cir. 2000).

There is no case that suggests that, as a matter of law, a trial judge may prohibit a defendant

from presenting evidence in support of this theory of defense prior to hearing any sworn testimony. In fact, the appropriate avenue for the government to seek to exclude such testimony would have been to file a motion *in limine*. The Government elected not to do so even though it knew quite well the reason Paul Webster gave the firearm to Charles Bailey.

As noted in *Deleveaux*, the justification defense is not offered to negate an element of the Government's case, but serves as a "legal excuse for the act and is based on additional facts and circumstances that are distinct from the conduct constituting the underlying offense." *Deleveaux*, 205 at 1298. Just because the defendant bears the burden of proof with regard to the proposed defense does not mean that the defendant is required to prove it to the district court through a proffer of evidence outside the jury's presence. In fact, in both *Deleveaux* and *Rice*, the defendants offered testimony in support of their claims of a justification defense. Only *after* the Court heard the testimony, did the trial court conclude that an instruction was not warranted. Thus, with all due respect, the issue was one for the jury to decide, not the Court.

The Eleventh Circuit addressed this issue in an unpublished opinion styled *United States v. Chapman,* 153 Fed. Appx. 583 (11th Cir. 2005) (unpublished). In *Chapman,* the Government filed a motion *in limine* to preclude the defendant from putting on evidence in support of a justification defense. The trial court denied the Government's motion and the evidence was admitted. *Id*. at n.2. The defendant presented evidence that he took a gun away from a child that was playing with it. However, the evidence established that the defendant was sitting in his truck drinking beer after he allegedly retrieved it from the child. The Eleventh Circuit held that the district court properly refused to give the instruction under the facts of the *Chapman* case, but specifically declined to address "whether taking a gun from a child playing with it would entitle a defendant to the

8

justification defense," but noted that, "the justification defense might be proved in a way other than that set out in *Deleveaux*. *Id*. at 586, n.1.

The evidence produced by the Government in this trial established nothing more that, in direct response to a threat to the Bailey child, Paul Webster drove an unloaded firearm 3 miles to the child's home and gave it to her father for the child's protection. There was absolutely no evidence presented that Mr. Webster ever had any illicit intent in mind or that he was motivated by any desire other than the protection of the life of a 10 year-old little girl. The issue of whether the threat to that little girl was imminent and impeding was a factual one for the jury to decide. In any event, the Court should have heard all the testimony before *sua sponte* ordering the defense not to mention anything regarding the uncontroverted testimony regarding Mr. Webster's reason for transporting the weapon to Charles Bailey.

### **The Government Opened the Door to the Proffered Theory of Defense**

The Court's error in prohibiting all testimony regarding the motivation of Paul Webster was exacerbated when the Government introduced the statement of Paul Webster in which he admitted possession of the firearm, but prevented the defense from explaining or offering testimony regarding the statement that the Government intentionally put before the jury after the Court ruled that the defense could not mention the exact same statement.

Essentially, the Government was permitted by the court to say "the statement says he possessed it, he possessed it, end of story." What the Government successfully accomplished was to convince the Court from allowing Mr. Webster to present any theory of defense, and then turned around and offered the statement justifying such a theory in its case in chief.. When the Government

did was to allow certain excised portions of Mr. Webster's statement to be presented to the jury but, at the same time, prohibited Mr. Webster from commenting on that very same statement. Such conduct on behalf of the Government, at a minimum, entitles the defense to be able to fully explore the evidence the Government willingly introduce. Once the "door was opened" by the Government, Mr. Webster should have been permitted to present testimony explaining or countering that statement, the Court prohibited him from doing so, except to a very limited extent. This error requires the granting of a new trial.

**The Court Failure to Give the Defense's Requested Jury Instruction was Error**

The District Court's failure to give Mr. Webster's theory of defense instructions require a new trial because it prevented him from preventing a meaningful defense, and thus was an abuse of discretion. The Eleventh Circuit has held that a defendant is entitled to a jury instruction that conveys his theory of defense, as long as it has **some basis in the evidence** and has legal support. *United States v. Elso*, 422 F.3d 1305, 1308 (11th Cir. 2005) ("There is no question that a defendant is entitled to a jury instruction that conveys his theory of defense, 'as long as it has some basis in the evidence and has legal support.'"(quoting *United States v. Nolan*, 223 F.3d 1311, 1313-14, 11th Cir.2000)).

The trail court's failure to give a requested jury instruction requires a new trial where (1) the requested instruction was substantively correct; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give it substantially impaired the defendant's ability to present an effective defense. *Id*. at 1309. See also *United States v.* Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005) (same); *United States v.* Martinelli, 454 F.3d 1300. 1309) (11th Cir. 2006)

10

(same); *United States v. Anderson,* 326 F.3d 1319, 1326 (11th Cir. 2003) (same); *United States v. Drury*, 396 F. 3d 1303, 1318 (11th Cir. 2005) (considering the jury instructions as a whole, the question is whether the jury was able to understand the issues without being misled).

The two theories of defense were properly asserted by the Paul Webster in this case. Due to the Government's "error" during its opening statement, the Court did allow a small amount of testimony concerning the attempted abduction of Bridgette Bailey. However, the Court severely curtailed the Defense in presenting evidence from which the jury could decide whether there was an imminent threat to the little girl. Such evidence, the Defense asserts, was available. The threat to Bridgette Bailey had not dissipated during the few hours since her attempted abduction. In fact, had Mr. Webster been permitted to do so, he would have introduced evidence that the potential "attacker" had returned to the Bailey residence during the night and remained at large.

It is beyond question that the Eleventh circuit has recognized a justification defense to a charge of being a felon in possession of a firearm and while the Eleventh Circuit has not specifically ruled on the innocent possession defense, it had not rejected either. Both theories of defense were supported by the evidence introduced at trial and the evidence that Mr. Webster could have introduced st trial. As stated in *Elso*, as long as there is some basis for the requested instruction, a defendant is entitled to have the jury instructed on his theory of defense. The failure of the Court to do so in this case was an abuse of discretion and warrants a new trial.

### The Government's Misconduct Warranted the Granting of a Mistrial and a New Trial

The United States Supreme Court has long recognized that, "while [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55

S.Ct. 629, 633, 79 L.Ed. 1314 (1934). Indeed, as the court noted:

> The United States Attorney is a representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Id*. (Reversing conviction where Government's "pronounced and persistent" improper conduct impact on the jury could not be deemed inconsequential.) The Government in this case played foul. The Government, through improper arguments and rulings, completely controlled the introduction of evidence in this case while at the same time arguing vehemently against the defense's ability to counter or question the very evidence she used to obtain a conviction. That is not justice, that is not proper advocacy, it is not due process and it is not a fair trial.

In *United States v. Campa*, 419 F.3d 1219, 1262 (11th Cir. 2005), the Eleventh Circuit noted that "[a]ttorneys representing the United States are burdened both with an obligation to zealously represent the government and, as a 'representative of a government dedicated to fairness and equal justice to all,' an 'overriding obligation of fairness' to defendants." *Id*. (quoting *United States v. Wilson*, 149 F.3d 1298, 1303 (11th Cir. 1998). The Government, in this case, was not fair to Paul Webster. Indeed, it was clear that the Government sought not justice, but rather a quick conviction with no evidence from the defense at all. The Government's claim that the evidence was irrelevant is disingenuous at best in light of thee fact that the Government introduced the evidence itself with its very first witness on the very first day of trial, mere minutes after arguing against its admission.

Moreover, "[a] prosecutor's reliance on a legal position despite 'knowing full well' that it is wrong is 'reprehensible' in light of his duty 'by virtue of his oath of office.'" *Id*. at 1262-63. Here, the Government tried to rationalize its conduct by claiming the evidence would be relevant if Mr.

Webster took the stand. The Government. However, knew full well that Mr. Webster had no intention of testifying at trial because the parties had entered into a joint stipulation concerning his prior felony conviction and that stipulation had been published to the jury *prior* to the Government's misconduct. The Government's legal position was absolutely absurd; that the evidence was irrelevant if admitted by the Defense but relevant if admitted by the Government because of the possibility that Mr. Webster might testify on his own behalf.

As the Court advised the jury, opening statements provide counsel with an opportunity to "explain the issues in the case and summarize the facts they expect the evidence will show." (Trial Transcript page10) Though the Court also stated that the statements should not be considered evidence or instructions on the law they, "nevertheless . . . are intended to help you understand the issues and the evidence as it comes in as well as the position taken by both sides." (Trial Transcript page 11)

Additionally, the Government offered a theory of guilt which the evidence at trial was insufficient to support. The Government argued that Paul Webster could be found guilty as charged in the Indictment based on the fact that he admitted "seeing the gun" in the shed a month or two before he gave it to Charles Bailey. The law does not prohibit a convicted felon from *viewing* a firearm; the law prohibits only the *knowing possession* of a firearm. The fact that Mr. Webster may have previously viewed the firearm does not establish, beyond a reasonable doubt, that Paul Webster knowingly possessed the firearm as charged in this case. This was an inconsistent and improper argument made to the jury by the Government, was insufficient to sustain a conviction, and therefore Mr. Webster is entitled to a Judgement of Acquittal as the Government failed to prove knowing possession on this basis.

13

Additionally, Mr. Webster is entitled to a new trial because, the selection of the jury violated the requirements of the Middle District of Alabama's Plan for the Random Selection of Grand and Petit Jurors, the Jury Selection and Service Act, 18 U.S.C. § 1861 *et seq*., and Mr. Webster's rights under the Fifth Amendment Due Process Clause and the Sixth Amendment guarantee of an impartial jury. The method of jury selection resulted in a jury, jury venires and jury wheel which substantially under-represent African-Americans in relation to the number of such persons in the community, resulting in a representation of African-Americans which is not fair and reasonable in relation to the number of such persons in the community, and resulting in a jury which was not drawn from a fair cross-section of the community.

## CONCLUSION

Under the Constitution of the United States, an accused has a guaranteed right to a fair trial by an impartial jury, the right to the effective assistance of counsel and the right to not be incarcerated without due process of law. Sadly, Paul Webster was not afforded those rights in this case. The court erroneously prohibited Mr. Webster from asserting a viable theory of defense, thus rendering counsel ineffective in representing him, the Government engaged in misconduct throughout the trial by arguing both for the introduction of evidence by the Government and the exclusion of any contrary evidence by the defense. The Government also erroneously stated that it did not have to prove its case "beyond all reasonable doubt" (Trial Transcript, page 13) and argued the jury could find Mr. Webster guilty for possession of the firearm 2 months before the charged date, even though there was little proof to prove that.

Mr. Webster asserts that the Court should grant a mistrial in this case based on prosecutorial

14

misconduct, rule that a new trial is warranted based on the court's failure to give the requested jury instructions and its failure to permit the Defense from presenting relevant evidence, or enter a Judgment of Acquittal in this case, because the evidence the Government did present did ot establish, beyond a reasonable doubt that Paul Webster knowingly possessed a firearm in November of 2006 as charged in the Indictment.

    Dated this 28th day of March 2007.

                                            Respectfully submitted,

                                            s/Jennifer A. Hart
                                            **JENNIFER A. HART**
                                            FEDERAL DEFENDERS
                                            MIDDLE DISTRICT OF ALABAMA
                                            201 Monroe Street, Suite 407
                                            Montgomery, AL 36104
                                            Phone: (334) 834-2099
                                            Fax: (334) 834-0353
                                            jennifer_hart@fd.org
                                            AL Bar Code: HAR189

**CERTIFICATE OF SERVICE**

 I hereby certify that on March 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tommie Hardwick
Assistant United States Attorney

              Respectfully submitted,

              s/Jennifer A. Hart
              **JENNIFER A. HART**
              FEDERAL DEFENDERS
              MIDDLE DISTRICT OF ALABAMA
              201 Monroe Street, Suite 407
              Montgomery, AL 36104
              Phone: (334) 834-2099
              Fax: (334) 834-0353
              jennifer_hart@fd.org
              AL Bar Code: HAR189