IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 03:06r266-WKW |
| | ) | |
| PAUL EUGENE WEBSTER | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT WEBSTER'S
MOTION FOR NEW TRIAL AND
RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

This matter is before this Court pursuant to Defendant Paul Eugene Webster's motion for

a new trial and renewed motion for judgment of acquittal.  The United States of America, by and

through Leura G. Canary, United States Attorney, and Tommie Brown Hardwick, Assistant

United States Attorney, both for the Middle District of Alabama submits its response to

defendant Webster's motion for a new trial and renewed motion for judgment of acquittal:

**Procedural Background**

On November 16, 2006, a grand jury for the Middle District of Alabama returned a

single-count indictment against Paul Eugene Webster, (hereinafter "Webster").  The grand jury

charged that on or about November 2, 2006, in Lee County, Alabama, within the Middle District

of Alabama, Webster, who had been previously convicted of a felony, punishable by

imprisonment for a term exceeding one year under the laws of the State of Alabama, knowingly

possessed a firearm which affected interstate commerce, specifically, a Remington, model 550-1,

.22 caliber rifle, and  in violation of Title 18, United States Code, Section 922(g)(1), (Doc. 8)[1].

---

[1]     "Doc." refers to the District Clerk's Docket number.  "Vol." refers to the court
reporter's transcript of trial and uses the volume numbers assigned by the court reporter.

On November 30, 2006, the Order On Arraignment set the trial of the case to commence on January 8, 2007. The government filed its proposed jury instructions and proposed voir dire on December 18, 2006.[2] (Docs. 15, 16). On December 28, 2006, the defendant timely filed proposed jury instructions and proposed voir dire. (Docs. 19, 20). In addition, the government filed proposed jury instructions related to the forfeiture aspect of the case only. (Doc. 22).

On January 5, 2007, sometime after noon and before five o'clock, the defendant filed Defendant's Requested Theory of Defense Instructions (Doc. 29), and a Request for Status Conference (Doc. 30). The defendant's theory of defense motion made a request that the court instruct the jury on a justification defense and innocent possession defense. Contrary to the defendant's assertion, the government filed an objection to defendant's proposed theory of defense instruction on Sunday night, January 7, 2007. (Doc. 31-1)[3].

On the morning of trial, January 8, 2007, the defendant filed a Motion to Dismiss the Indictment Due to the Composition of the Jury Venire. (Doc. 32). Also on January 8, 2007, the government filed its Limited Response To Webster's Motion For Dismissal Of Jury And

---

[2]     The Order On Arraignment (Doc. 14) and the Pretrial Conference Order (Doc. 18), ordered that the parties file any jury instructions, voir dire, and motion in limine one week before the trial date, which set a deadline of December 28, 2006, since the trial date was set on January 8, 2007.

[3]     Government counsel personally filed the response using the CM/ECF system late Sunday night. The title of the response on the docket sheet is "Proposed Jury Instructions by USA...," (Doc. 31). The response that the government printed, that the Court referred to on the morning of trial, and that Ms. Hart referred to on the morning of trial, is correctly titled "United States Objection to Defendant's Proposed Theory of Defense Instructions Numbers One and Two," (Doc. 31-1). (Transcript Pretrial Matters and Jury Selection (hereafter "Pretrial Transcript")), pp. 10, 11).

Objection To Composition Of The Jury response (Doc. 34-1).[4]

On January 8, 2007, a jury was empaneled and trial commenced. However, prior to the testimony of witnesses, the Court held a hearing on the two requested jury instructions of justification and innocent possession. The Court did not immediately rule on the innocent possession defense. The Court stated that he <u>would not</u> give the requested jury instruction on innocent possession or transitory defense unless the defendant could demonstrate through an Eleventh Circuit case that the defense has been adopted. (Pretrial Transcript, p. 10). Moreover, the Court stated that it would "hold in abeyance a ruling on the innocence defense until [it heard] the proffer of the government. (Sealed Transcript, p. 104). The Court denied the requested jury instruction on a justification defense during the defendant's ex parte proffer. (Pretrial Transcript, p. 107); (Sealed Transcript, pp. 101-102). (citing, <u>United States v. Rice</u>, 214 F.3d 1295, (11th Cir. 2000), <u>United States v. Deleveaux</u>, 205 F.3d 1292 (11th Cir. 2000), citations omitted in transcript).

## <u>Summary of Defendant's Proffered Testimony</u>

Although the facts summarized in the present motion for new trial and renewed motion for judgment of acquittal are different in parts, Webster, through counsel, proffered the following facts during its *ex parte* proffer: Between 5:30 p.m. and 6:00 p.m. one evening (November 1, 2006), Mrs. Patricia Bailey was on the phone talking to Webster when her ten year old daughter came home and stated that a man had come out of the woods and grabbed her but she got away.

---

[4]    The jury composition issue is no longer before this court since United States District Judge W. Keith Watkins referred the motion to United States Magistrate Judge Charles S. Coody for disposition if there [was] a conviction. (Pretrial Transcript, p. 5).

3

Defense counsel stated that there were marks left on the child.[5]  Mrs. Bailey notified her husband,

who is a truck driver, but he was several hours away from home.  Defense counsel further

proffered that Mr. Bailey asked Webster to stay at his residence until Mr. Bailey arrived home.

Webster stayed at the residence until Mr. Bailey arrives homes.  Webster was already aware of a

firearm in the shed behind the house that he lives in with his mother.  Although Webster had

never touched or used the firearm, about 10:00 a.m. the next morning (November 2, 2006), he

retrieved the firearm and carried it to Mr. Bailey at his residence.  It was proffered that the Bailey

child had awakened crying and alleging that a man knocked on her window during the night, that

she looked out of the window and saw the man who was wearing the same type clothes she had

seen earlier in the day.[6]  Although the statement from Mr. Bailey to the police states that Webster

was in possession of a pistol also, it was actually a pellet gun which Webster retained.  The

defense further proffered that there had been a series of incidences in the "trailer park where a

drifter or an unknown person had been lurking around."  (Sealed Transcript, p. 98).   Next, the

defense proffered that another young girl was approached by a man in the same car after Webster

was in police custody, which would support the imminence of the threat.  (Sealed Transcript, p.

99).  Finally, the defense proffered that Mr. Bailey learned that Paul Eugene Webster was a

registered sex offender, a felon, and had possessed a firearm.  (Sealed Transcript, p. 99).

Therefore, Mr. Bailey reported Webster's possession of the firearm to the Police.  It should be

---

[5]     The police officer who responded to the scene did not note any marks on the
child.

[6]     There was no information during the proffer that would indicate that Mr. Bailey
asked for a firearm, or that anyone told Webster what had happened to the Bailey child during the
night.

noted that defense counsel also proffered that "the government has conceded that...[i]t's not Webster that attempted this abduction."[7] Id.   The defense also proffered that the defendant Webster only possessed the firearm for five to ten minutes which was the length of time it took Webster to get from his residence to the Bailey's residence.  Although it was the Bailey's newly discovered information that Webster was a convicted and registered child sex offender that prompted Bailey to report Webster's possession of a firearm to the police, Bailey's daughter would testify that it was not Webster who tried to abduct her.  (Sealed Transcript, p. 99).

The Court denied the defendant's requested justification defense in that the proffered facts did not meet the elements of the defense.  First, the Court stated that the defendant failed to establish the defense in the context of 922(g)(1), since the defendant was not under any unlawful and present, imminent, and impending threat of death or serious bodily injury.  (Sealed Transcript, p. 103).  Secondly, the Court stated that "too much time passed from the time the threat was first known until the time [Webster] delivered the weapon." Id.

During a very lengthy discussion concerning what evidence the Court would allow, the following occurred:

> Ms. Hart:                    ... And I would want to tell the jury that  Mr. Webster ...went to the
>                                    shed, picked up the firearm, and moved it.  And because of that,
>                                    you can find him not guilty.  I'm assuming the Court is now going
>                                    to preclude me from making that argument?

---

[7]        The government did not concede that Webster did not attempt the abduction, the government stated in a footnote that "[t]here was no evidence that Paul Eugene [Webster] attempted to abduct the Bailey's daughter."  (Doc. 31. P. 1).  The police had not developed any evidence on a suspect to the attempted abduction at the time.

| | |
|---|---|
| The Court: | Finding him not guilty, I would preclude it at this point.  You were going to explain why he did what he did, but I'm not going to allow you to argue that you should find him not guilty on the basis of that point. |
| Ms. Hardwick: | Your Honor, I think that a door is about to be opened here that the parties had agreed that they would not go into....<br>At this point, if anyone else other than Mr. Webster is going to testify regarding that, the government would like to present now its objection to that.  And based on further information that the government has learned over the break, we also would like to add to that an objection to any testimony regarding what happened in the community, what happened with another child, any other calls that were made to law enforcement regarding any alleged or attempted abduction of the child because none of that testimony goes to the elements of a 922(g)(1) defense.<br><br>And what the government has just learned is that there are a number of witnesses, including police officers, that were subpoenaed by the defense, and that is the gist of their testimony.  Its totally irrelevant.... |
| Ms. Hart: | ...and how the government was aware of what we just stated in our proffer is of some concern to me...because we asserted the facts as they actually happened, that he got this--his whole possession, if indeed he did possess it, was --was on that day, the day after a young girl that he cares for very much was nearly kidnaped. |
| The Court: | You're saying you're going to proffer–offer to prove that without using his testimony? |
| Ms. Hart: | Yes, Your Honor.... |
| The Court: | No, ma'am.  We're getting too far afield there.  I agree with the government.  We are going way out of bounds on the relevancy of the evidence as to this charge. |

(Pretrial Transcript, pp. 113-115.)

The Court sustained its ruling that based upon the proffered information the defense

would not be able to establish a justification defense and reserved its ruling on the innocent

6

possession or transitory defense until the conclusion of the evidence. (Pretrial Transcript, pp. 117-188).

## Opening Statements

The government's opening statement consisted of an overview of the elements of the charged offense and testimony the government intended to present to prove those elements. The defense is correct that the government did not mention irrelevant facts that should not be considered by the jury in making their decision on the innocence or guilt of Paul Eugene Webster. The government did tell the jury that the government intended to present evidence that Webster had provided the police with a statement wherein he admitted that he located the firearm in the shed behind his mother's home, he carried the firearm to the Baileys, and he knew he was not supposed to possess a firearm as a convicted felon. The government did not emphasize the reasons Webster carried the firearm to the Bailey's residence.

After introducing the defendant, the defense began its opening statement by telling the jury about a little girl coming home from a friend's house. (Jury Trial Vol. I, p. 14). The government objected and the parties had a side bar. The Court concluded that the defense could talk about the incident involving the minor child in the house and that [Mr. Webster][8] delivered the gun. (Jury Trial Vol. I, p. 16). The government asked that the Court caution the defense to stop short of saying that the defendant carried the firearm to the Bailey's for "protection." (Jury Trial Vol. I, p. 17). The Court so ordered. Id.

---

[8]    The transcript says Mr. Bailey delivered the gun. The government submits that the Court intended to say Mr. Webster, the defendant, and the parties understood that the Court was referring to Mr. Webster and not Mr. Bailey.

The government's first witness was Keith Jordan, an Investigator with the Lee County Sheriff's Office, and a deputized Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("Officer Jordan"). Officer Jordan testified that he advised Webster of his <u>Miranda</u> rights. (Jury Trial Vol. I, p. 23). Officer Jordan typed Webster's statement and allowed Webster an opportunity to read the statement before signing it. (Jury Trial Vol. I, p. 25). Webster told Officer Jordan that he first discovered the firearm in the shed behind his house approximately two months earlier. <u>Id.</u> Webster's statement was given on November 6, 2006; therefore, two months earlier would have been around September, 2006. The government's direct examination focused upon the constructive and actual possession of the firearm by the defendant. There were no questions regarding the incident of the minor child. The defendant's signed <u>Miranda</u> rights form and his statement were admitted into evidence without objection. (Jury Trial Vol. I, p. 24).

After the government concluded its direct examination of Officer Jordan, the defense moved for a mistrial alleging that the government had precluded the defense from saying anything in their opening statement regarding the fact that Webster had taken the firearm to the Bailey's residence for protection because of the alleged attempted abduction of the minor child. (Jury Trial Vol. I, p. 28-29). The defense admitted that they knew that the government was going to introduce Webster's statement. (Jury Trial Vol. I, p. 29). The Court denied the motion for a mistrial, and ruled that since the government introduced the statement, "cross-examination [would] be allowed on it to the extent that the statement goes." (Jury Trial Vol. I, p. 32). The defense further moved for a mistrial alleging prosecutorial misconduct since the government objected to the use of the word "protection" and Webster's statement contained the word

"protection". The Court ruled that it did not find prosecutorial misconduct. The Court did find

that the government had "opened the door and that ..all [would] be able to walk through it to the

extent of [the] statement." Id. Notwithstanding the Court's ruling, the government only

questioned Officer Jordan regarding Webster's possession of the firearm. Moreover, the defense

conceded that the government continued its questioning of Officer Jordan "carefully leaving out

the portion regarding the fact that the firearm had been given to Mr. Bailey 'for protection'."

(Doc. 57, p. 5).

### Trial Testimony

The government presented its case through the testimony of three witnesses, the

introduction of the firearm, the defendant's signed waiver of rights and signed statement. In

addition to the evidence stated above, Officer Jordan testified that Webster admitted to him that

he was a felon and knew that he should not possess a firearm. (Jury Trial Vol. I, p. 28). Charles

Bailey testified that Webster brought the firearm to his residence for the safety of his family.

(Jury Trial Vol. I, p. 48, 53). Bailey also testified that he was told that Webster had a prior

felony conviction. (Jury Trial Vol. I, p. 14). After Bailey and his wife verified Webster's felony

conviction, Bailey called the police to report the fact that Webster had possessed a firearm. (Jury

Trial Vol. 1, p. 49). Bailey was concerned because he did not know what the firearm had been

used for. Id. Special Agent Theron Jackson, an expert on the Interstate Nexus of firearms,

testified that government exhibit #1, the firearm, was manufactured in the state of New York, and

therefore moved in interstate commerce. (Jury Trial Vol. I, p. 59). Special Agent Jackson also

testified that the fact that the firearm was 30 to 40 years old would have no bearing on it as a

firearm. Id. at 60-61.

9

At the close of the government's case-in-chief, the defense made a motion for judgment of acquittal, which was denied. (Jury Trial Vol. I, p. 64, 66). Charles Bailey was the first witness for the defendant. Bailey testified that he was traveling when he received a phone call from his wife. Bailey's wife told him that someone had attempted to abduct their daughter. (Jury Trial Vol. II, pp. 101-102). Bailey stated that he told his wife to call the police and asked Webster to stay at his residence until he arrived home, which would be approximately three and a half hours later. Id. at 102. Bailey testified that he did not ask Webster to bring him a firearm. Id. at 108. Notwithstanding, Webster came to the Bailey's residence at approximately 10:30 a.m. the next morning. Id. at 102. The defense called Officer Jordan to testify about a BB gun. Id. at 123-132. Officer Jordan testified that Bailey initially told the police that Webster had a "pistol." Officer Jordan testified that based upon the shape of the object, Bailey believed Webster possessed an automatic pistol. Bailey also told police that Webster carried the pistol back home with him. It was later determined that the "pistol" was actually a BB gun. Officer Jordan further testified that the BB gun would not have generated a criminal charge.

The defense called Betty Lou Hornsby, the defendant's mother. Ms. Hornsby testified that she owned the residence and Webster lived with her. She further testified that the firearm was located in one of the sheds behind the residence. (Jury Trial, Vol. II, at pp. 132-145). Ms. Hornsby testified that the firearm had been in the shed for approximately five years. Id. at 136. Ms. Hornsby further testified that she had never seen Webster with the firearm. Id. at 137. However, on cross-examination, Ms. Hornsby admitted that Webster had access to the shed and the key to the shed. According to Ms. Hornsby the firearm was visible when you entered the shed and that Webster could exercise control of the firearm if he wanted to. Id. at 138-141. Ms.

Hornsby also admitted that she would have no reason to ever keep Webster out of any room or shed at the house. Id. at 141. Although Ms. Hornsby testified that she did not give Webster permission to take the firearm out of the shed, she admitted that they both "live there and both of [them had] access to anything on [her] property." Id. at 143-144. The defense presented photographic evidence through Danny Carmichael: (1) showing the area in which the Baileys lived; (2) the shed behind the defendant's and his mother's residence; and (3) the distance between Webster's residence and the Bailey's residence. Id. at pp. 152-158. Carmichael testified that it took him approximately five to ten minutes to drive from the Webster's residence to the Bailey's residence.

The government recalled Officer Jordan. According to Officer Jordan, leaving Webster's residence, it would take less turns to go to the sheriff's office than it would take to go to the Baileys. Id. at 171.

The defense renewed its motion for a Rule 29, judgment of acquittal, alleging that the government had not proved that the defendant knowingly possessed a firearm. The motion was denied. Id. at 176. After the charge conference, the Court instructed the jury. Id. at pp. 176-181.

<u>**Argument**</u>

I.     **The Defendant Was Not Denied A Fair Trial When the Court Sustained the Government's Objections To The Presentation of Irrelevant and Immaterial Evidence In Support of Justification, Innocent Possession or Transitory Defenses.**

The defense consistently argues that the Court should have allowed the defense to put forth a justification defense, an innocent possession or transitory defense. During its proffer to the Court, the defense outlined its evidence to support the purported defenses. The Court

11

concluded that the proffered evidence would not support a justification defense, and reserved it ruling on the innocent possession defense. Before the defense began calling witnesses, the Court clarified its rulings on the justification defense and the innocent possession/transitory defense. The Court referred to case law from the United States Supreme Court in United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, (1980), and the Eleventh, Tenth, Eighth, Sixth, Fifth, and the District of Columbia Circuits before ruling that the justification defense requires a defendant to prove there was no legal alternative available to him given the circumstances. (Jury Trial Vol. II, pp. 70-75). Finally, the Court found "the innocent possession defense to be redundant with the justification defense." Id. at p. 79). The Court explained that,

> "what that generally means in this case is that the defendant is entitled generally to a theory-of-defense instruction when the instruction articulates a correct theory of law and sufficient evidence has been presented to support that theory. Here the defendant has proffered no factual predicate sufficient to establish a justification defense."[9]

Id.

Applying the holding in Bailey, the Court allowed the defense to proffer the evidence that it intended to present in support of the justification defense and the innocent or transitory

---

[9]    United States v. Bailey, 444 U.S. 394, 415, 100 S.Ct. 624, 637 (1980), (holding that "where a criminal defendant is charged with escape and claims that he is entitled to an instruction on the theory of duress or necessity, he must proffer evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force.... The requirement of a threshold showing on the part of those who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility. Nor is it based on any distrust of the jury's ability to separate fact from fiction. On the contrary, it is a testament to the importance of trial by jury and the need to husband the resources necessary for that process by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses. If, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.")

12

defense. The Court concluded that one of the elements of a justification defense is that there must be an immediate emergency. In the instant case, Webster carried the firearm to Bailey the next morning after the alleged abduction of the minor child, and after the incident had been reported to law enforcement. The defense continues to argue that law enforcement had not caught anyone, that they failed to interview the child, and that the firearm was for the protection of the Bailey family. Whatever complaints the defense may have about the manner in which the Sheriff's department handled the investigation of the alleged abduction, it was irrelevant and immaterial to the elements of the charged offense. As stated in Bailey, if the affirmative defense consists of several elements and the evidence is insufficient to sustain all of the elements, the trial court and the jury need not burden itself with the other elements.

The defense correctly states the elements that must be proven in order to establish a justification defense. A justification defense to a 922(g) offense may be established if the defendant can show four elements by a preponderance of the evidence - (1) that the defendant was under an unlawful and present, imminent, and an impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had a reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000), United States v. Rice, 214 F. 3d 1295, 1297 (11th Cir. 2000).

The Court correctly concluded, in the instant case, that the imminence or emergency was no longer present at the time Webster possessed the firearm. Moreover, Webster placed himself in the position of providing what he termed "protection" for the Bailey family, and in the middle

13

of a criminal investigation. Therefore, the Court did not deny the defendant a fail trial by not allowing the defense to put forth irrelevant and immaterial evidence, when the evidence could not have established a justification defense.

The Court correctly ruled that the defendant could not establish an innocent possession or transitory defense. The Court relied on <u>United States v. Mason</u>, 233 F.3d 619 (D.C. Cir. 2001). In <u>Mason</u>, the court held that the evidence must establish (1) the firearm was attained innocently and held with no illicit purpose, and (2) possession of the firearm was transitory. The Court adds, that in light of the circumstance presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly and reasonably as possible. <u>See also</u> (Jury Trial Vol. II, p. 78). In keeping with the holding in <u>Mason</u>, this Court explained that "in particular, a defendant's actions must demonstrate both that he had an intent to turn the weapon over to the <u>police</u> and that he was pursuing such an intent with immediacy and through a reasonable course of conduct." <u>Mason</u> at 624 (Jury Trial Vol. II, p. 78). In the instant case, it is quite clear that Webster had no intent to turn the firearm over to the police. Instead, Webster admitted that he intended and did, in fact, take the firearm to the Bailey's residence. This Court correctly found that the defense, based upon proffered evidence, could not establish an innocent or transitory possession defense.

**II.    The Admission of Webster's Unredacted Statement Did Not Open The Door To The Defendant's Theory Of Defense.**

During the direct testimony of Officer Keith Jordan, the government introduced a copy of the defendant's statement, without objection from the defense. In his statement, Webster said that he carried the firearm to the Baileys for protection. The government inadvertently left the

reference to "protection" in the statement admitted into evidence. The defendant moved for a mistrial alleging at the same time that the government opened the door to the defendant's theory of defense. The Court denied the motion for a mistrial, but allowed the defense to question Officer Jordan regarding the reason Webster gave for possessing the firearm. The Court would not allow the defense to present other irrelevant evidence. Although the Court allowed the defense to illicit testimony related to Webster's statement, the Court stated that the offense of 922(g) is a strict liability crime and the defendant's state of mind remained irrelevant. See United States v. Funches, 135 F.3d 1405, 1407 (11th Cir. 1998); United States v. Thompson, 25 F.3d 1558, 1563-64 (11th Cir. 1994). Pursuant to Federal Rules of Evidence, Rule 106, the Court would not have erred had it ordered that the "protection" portion be redacted prior to the jury viewing the complete statement and still precluded the defense from questioning the witness regarding Webster's reason for taking the firearm to the Bailey's residence. The reason being, Webster's state of mind was not a relevant element of the charged offense. Because of the government's inadvertence, the defense was able to present evidence that was not relevant to the 922(g) strict liability offense. In essence, the defense benefitted from the government's inadvertence.

### III.    The Court's Refusal To Instruct The Jury On The Proffered Affirmative Defenses Was Not Error.

The law in this circuit is that a defendant who asserts a justification defense is required to prove justification by a preponderance of the evidence. Deleveaux, at 1299. In this case, Webster was unable to prove the necessary element of imminent or impending danger. In addition, Webster was unable to prove that he took action to rid himself of the firearm and

deliver it to the police.  In both instances, Webster failed to prove the affirmative defenses by a preponderance of the evidence.  The government agrees with the law stated by the defense in United States v. Nolan, 223 F.3d 1311, 1313-1314 (11th Cir. 2000), and United States v. Elso, 422 F.3d 1305, 1308 (11th Cir. 2005), both holding that "a defendant is entitled to a jury instruction that conveys his theory of defense, 'as long as it has some basis in the evidence and has legal support'."   Moreover, in United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006), cited by this Court, the Tenth Circuit held that "[a] defendant is not entitled to an instruction which lacks a reasonable legal and factual basis."   This Court concluded that the facts proffered by the defense did not establish a justification or innocent or transitory defense. Therefore, the Court had no factual basis supported by law to justify charging the jury on the requested affirmative defenses.

      **IV.**    **The Defense Was Not Entitled To A Mistrial And Is Not Entitled To A New Trial Since the Defense Benefitted From The Government's Inadvertence.**

The government submits that the defendant's request for a mistrial based upon the government's inadvertence is without merit.  First, the fact that Webster's unredacted statement was offered into evidence was no more than inadvertence.  Second, the statement was offered into evidence without objection.  Third, the defense admitted that they knew that the government would introduce Webster's statement.  (Jury Trial Vol. I, p. 29).  Finally, the defense was able to pursue testimony, but for the government's inadvertence, the Court had previously ruled inadmissible.  Therefore, the defendant was not entitled to a mistrial and is not entitled to a new trial since the government's inadvertence was advantageous to the defense .

## V.    The Government Properly Argued The Facts And The Law.

The defendant argues that the government improperly offered a "theory of guilt" which the evidence at trial did not support.  The government's argument to the jury reflected a summary of the testimony of the government and defense witnesses and demonstrative evidence.  The Court clearly instructed the jury that,

> "...you must consider only the evidence that I have admitted in the case.  The term 'evidence' includes the testimony of the witnesses and the exhibits admitted in the record.  Remember that anything the lawyers say is not evidence in the case.  It is your own recollection and interpretation of the evidence that controls.  What the lawyers say is not binding upon you."

(Jury Trial, Vol. II, p. 212).

The government's nor the defendant's argument to the jury were not binding upon the jury.  Both parties objected and received rulings from the Court at various stages of closing arguments.  However, the defendant's efforts to raise the government's closing arguments to a level of misconduct is without merit.[10]

## VI.    The Composition Of The Jury Is Not Properly Before This Court.

On the morning of trial, Webster filed a motion challenging the composition of the jury venire.  This Honorable Court referred the motion to United States Magistrate Judge Charles S. Coody for disposition.  Therefore, this issue is no longer before this Court.

---

[10]    The defendant's entire motion for judgment of acquittal and motion for a new trial focuses on personal attacks of government counsel instead of maintaining professional legal arguments on the legal issues raised.  To the extent that the defense has personally attacked government counsel with baseless accusations, government counsel does not concede any of the allegations.

## CONCLUSION

The defendant's arguments were properly decided by this Court. For the foregoing reasons , the defendant's motion for a judgment of acquittal and motion for a new trial should be denied.

Respectfully submitted on this 23rd day of April 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 03:06r266-WKW |
| | ) | |
| PAUL EUGENE WEBSTER | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2007, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following: Jennifer A. Hart, Esq., and Donnie Bethel, Esq.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: tommie.hardwick@usdoj.gov

19